IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SHAWN MONAGHAN, | : | |
| Plaintiff, | : | Civil Action No.: |
| | : | |
| v. | : | |
| | : | |
| WHITEHALL TOWNSHIP, | : | JURY TRIAL DEMANDED |
| Defendant. | : | |

**COMPLAINT AND JURY DEMAND**

Plaintiff Shawn Monaghan, by and through counsel, brings this civil action for damages and other appropriate relief against Defendant Whitehall Township, and alleges as follows:

I.  NATURE OF THE ACTION

1. This is a civil rights and employment discrimination action arising from Defendant's racially discriminatory, hostile, and retaliatory treatment of Plaintiff, an African-American police officer, culminating in his termination from employment. Plaintiff brings claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*; the Pennsylvania Human Relations Act ("PHRA"), 43 P.S. § 951 *et seq.*; and 42 U.S.C. § 1983, including violations of rights secured by 42 U.S.C. § 1981, the Equal Protection Clause of the Fourteenth Amendment, and the Due Process Clause of the Fourteenth Amendment.

2. Defendant maintained and enforced policies, customs, and practices that subjected Plaintiff to disparate discipline, a racially hostile work environment, heightened scrutiny, and termination because of his race, while similarly situated white officers were treated more leniently.

II.     JURISDICTION AND VENUE

3.     This Court has subject matter jurisdiction over Plaintiff's federal claims pursuant to 28 U.S.C. §§ 1331 and 1343.

4.     This Court has supplemental jurisdiction over Plaintiff's state-law claims pursuant to 28 U.S.C. § 1367.

5.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because the unlawful employment practices alleged herein occurred within the Eastern District of Pennsylvania.

III.    PARTIES

6.     Plaintiff Shawn Monaghan is an African-American male and a resident of Northampton County, Pennsylvania.

7.     Defendant Whitehall Township is a political subdivision of the Commonwealth of Pennsylvania and at all relevant times was Plaintiff's employer within the meaning of Title VII and the PHRA.

IV.    EXHAUSTION OF ADMINISTRATIVE REMEDIES

8.     Plaintiff timely filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") and the Pennsylvania Human Relations Commission ("PHRC"), alleging race discrimination, hostile work environment, retaliation, and discriminatory discharge.

9.     The EEOC issued a Notice of Right to Sue dated December 18, 2025.

10.    Plaintiff has satisfied all administrative prerequisites to suit under Title VII and the PHRA.

V.     FACTUAL ALLEGATIONS

11.    Plaintiff was hired by Defendant as a police officer on or about December 14, 2020.

12.    Prior to his employment with Whitehall Township, Plaintiff had approximately six years of prior law enforcement experience with the Philadelphia Police Department.

13.    Plaintiff successfully completed all required training and certifications and performed his duties competently and professionally throughout his employment.

14.    Plaintiff had no history of discipline reflecting dishonesty, excessive force, or dereliction of duty prior to the events described herein.

15.    Plaintiff ranked first on the combined written and physical examinations for the position of police officer.

16.    Despite Plaintiff's superior ranking and experience, Defendant hired a white female candidate with no prior law enforcement experience before Plaintiff.

17.    Shortly before Plaintiff's hiring, a senior command officer advised Plaintiff that the Department needed to be more diverse and that Plaintiff was the type of candidate it was seeking.

18.    Plaintiff was assigned to shifts composed entirely of white officers who socialized together outside of work and systematically ostracized Plaintiff.

19.    White officers refused to partner with Plaintiff during training, leaving him without backup except from instructors.

20.    One of Plaintiff's supervisors told the other officers to stay away from Plaintiff.

21.    White officers refused to back Plaintiff up on radio calls and traffic stops, while routinely backing up one another.

22. Plaintiff was subjected to repeated sixteen-hour shifts while white officers were not.

23. During Plaintiff's employment, white officers accused of serious misconduct, including domestic violence and theft, were treated with leniency and reinstated.

24. Plaintiff was terminated on December 12, 2023 following a non-violent PFA, while white officers under similar or more serious circumstances were retained.

25. On November 15, 2023, Defendant issued a Notice of Charges and directed Plaintiff to appear for a Loudermill hearing concerning potential discipline up to and including termination.

26. Plaintiff appeared at a Loudermill hearing on November 22, 2023, with union representation, and informed Defendant that he was actively pursuing judicial relief to modify or dissolve a Protection from Abuse order that temporarily restricted his ability to carry a firearm.

27. Despite being advised that Plaintiff had filed a Petition for Modification and that a court hearing was pending, Defendant proceeded to terminate Plaintiff's employment on December 12, 2023.

28. Plaintiff timely exercised his right to appeal the termination to the Whitehall Township Civil Service Commission, a protected activity opposing and challenging Defendant's adverse employment action.

29. A public evidentiary hearing on Plaintiff's appeal was held on January 30, 2024, at which Plaintiff, through counsel, contested the stated reasons for his termination and presented evidence that Defendant's decision was unjustified and inconsistent with its treatment of similarly situated white officers.

30. On January 23, 2024, prior to the Civil Service Commission's final decision, the Court of Common Pleas modified the Protection from Abuse order to permit Plaintiff to possess and carry firearms, undermining Defendant's asserted justification for termination.

31. Plaintiff notified Defendant and its Civil Service Commission that the Court of Common Please modified the Protection from Abuse order and that he was permitted to possess and carry firearms.

32. Notwithstanding the court's modification and Plaintiff's continued pursuit of reinstatement, Defendant maintained and defended the termination before the Civil Service Commission.

33. On April 11, 2024, the Civil Service Commission voted to deny Plaintiff's appeal and uphold the termination, thereby ratifying Defendant's adverse employment action.

34. Defendant's continued defense and ratification of Plaintiff's termination after Plaintiff engaged in protected activity, including the Loudermill response, the filing and prosecution of the civil service appeal, and the presentation of exculpatory court orders, constituted additional materially adverse actions that would dissuade a reasonable employee from opposing discrimination.

35. Defendant's actions were taken because of, and in retaliation for, Plaintiff's protected activity and opposition to unlawful discrimination.

36. Plaintiff was not afforded a meaningful opportunity to respond prior to termination.

37. Plaintiff complained internally and through formal proceedings about discrimination and disparate treatment.

38. Defendant escalated discipline and affirmed Plaintiff's termination after he engaged in protected activity.

39. Defendant's actions were approved and ratified by final policymakers and taken pursuant to customs and practices of racial discrimination.

## COUNT I
## TITLE VII (Race Discrimination)

40. Plaintiff Monaghan incorporates by reference paragraphs 1 through 39 as if those paragraphs are fully set forth here.

41. Plaintiff is a member of a protected class.

42. Plaintiff was qualified for his position and performed his job satisfactorily.

43. Plaintiff suffered adverse employment actions, including disparate discipline and termination.

44. Similarly situated white employees were treated more favorably under comparable circumstances.

45. Defendant's actions were motivated by Plaintiff's race.

46. Defendant's stated reasons for Plaintiff's termination were pretextual.

WHEREFORE, Plaintiff demands judgment against Defendant for compensatory damages, back pay, front pay, interest, attorneys' fees, costs, and all other relief available under Title VII.

## COUNT II
## TITLE VII (Retaliation)

47. Plaintiff Monaghan incorporates by reference paragraphs 1 through 46 as if those paragraphs are fully set forth here.

48. Plaintiff engaged in protected activity by opposing unlawful discrimination.

49. Defendant took materially adverse employment actions against Plaintiff.

50. There was a causal connection between Plaintiff's protected activity and Defendant's adverse actions.

WHEREFORE, Plaintiff demands all relief available under Title VII.

## COUNT III
## PHRA (Race Discrimination and Retaliation)

51. Plaintiff Monaghan incorporates by reference paragraphs 1 through 50 as if those paragraphs are fully set forth here.

52. Plaintiff is a member of a protected class under the PHRA.

53. Plaintiff was qualified for his position and performed his job satisfactorily.

54. Plaintiff suffered adverse employment actions because of his race and in retaliation for protected activity.

55. Defendant's conduct violated the PHRA.

WHEREFORE, Plaintiff demands all relief available under the PHRA.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

**BROUGHAL & DeVITO, L.L.P.**

Dated:   3/16/2026              By:   /s/ John S. Harrison
**JOHN S. HARRISON, ESQUIRE**
Attorney I.D. No. 53864
**ERIKA A. FARKAS, ESQUIRE**
Attorney I.D. No. 313686
38 West Market Street
Bethlehem, PA 18018
Telephone No.: (610) 865-3664
Facsimile No.: (610) 865-0969
*Attorneys for Plaintiff*